UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHARLES E. JUSTISE, SR.,

             Petitioner,

             v.                           CAUSE NO.: 3:21-CV-368-JD-MGG

WARDEN,

             Respondent.

<u>OPINION AND ORDER</u>

Charles E. Justise, Sr., a prisoner without a lawyer, filed a successive habeas

petition challenging his 2008 child molestation conviction in Marion County. (ECF 2.)

For the reasons stated below, the petition is dismissed.

I.      BACKGROUND

In deciding the petition, the court must presume the facts set forth by the state

courts are correct, unless Mr. Justise rebuts this presumption with clear and convincing

evidence. 28 U.S.C. § 2254(e)(1). On direct appeal, the Indiana Court of Appeals set forth

the facts underlying Mr. Justise's conviction as follows:

> On June 21, 2006, twelve-year-old D.B. spent the night at the home of
> Justise, her father, and Shawna Winston, her father's girlfriend. Justise and
> D.B. watched a movie, and D.B. fell asleep on a pallet on the floor in an
> upstairs bedroom. She awoke in the middle of the night when she felt
> Justise "feeling on her." Justise had pulled up D.B.'s shirt and bra and was
> touching her breasts with his lips. Justise told D.B. to go downstairs with
> him, and she did. Justise bent D.B. over one of the living room couches,
> removed her pants, and rubbed his penis against the cheeks of her
> buttocks for two to three minutes. Justise then moved D.B. to another
> couch where he got on top of her and tried to place his penis inside her
> vagina. There was no penetration. Justise then placed D.B. on his lap,

placed his finger inside her vagina, and moved it around in circles. Justise told D.B. that it was going to "tingle a little bit." Justise raised D.B. off of his lap and told her to "remember [that] this never happened." D.B. went upstairs and cried.

A few days later, D.B. told both her aunt, Ashley Jackson, and Winston what had happened. Winston informed D.B.'s mother about the molestation. When D.B. confirmed to her mother what had occurred, D.B.'s mother contacted the Indianapolis Metropolitan Police Department. D.B. was interviewed at Child Protective Services and examined by Methodist Hospital Sexual Assault Nurse Linda Kelley. Kelley noticed that D.B. showed notches or clefts on her hymen that could have been caused by something inserted into her vagina.

Detective Gregory Norris was assigned to the case. During his investigation, the detective downloaded recordings of telephone calls between Justise and Winston and Justise and D.B. while Justise was incarcerated in the Marion County Jail on other charges during June and July 2006. Many of the telephone calls made during that time period were not recorded. According to Buzz Michael, the keeper of inmate phone records at the Marion County Jail, the system failed to download approximately 90,000 phone calls due to a system wide failure. The logs indicated that the calls had been made, but the recordings did not exist. Michael explained that there was "no rhyme or reason behind which calls were lost and which calls were kept."

In October 2006, the State charged Justise with two counts of child molesting as class A felonies, three counts of sexual misconduct with a minor as class B felonies, child molesting as a class C felony, and two counts of sexual misconduct with a minor as class C felonies. Justise represented himself at the October 2008 trial. The State introduced evidence recordings of telephone calls between Justise and D.B., which were recorded while Justise was incarcerated in the Marion County Jail. In one of the telephone calls, D.B. confronted Justise about touching her and placing his finger in her vagina. She told him that she was not lying and quoted his comment to her that his finger in her vagina would "tingle a little bit."

Also during trial, Justise wanted to question Jackson about a phone conversation she had with D.B. According to Justise, D.B. told her aunt that she fabricated the molestation because she wanted to hide the fact that she had sexual intercourse with a boy name Jason. Justise wanted to introduce into evidence D.B.'s prior sexual history, but the trial court

refused to allow him to do so because this evidence violated Indiana Evidence Rule 412 and was therefore inadmissible. Justise denied molesting his daughter.

A jury convicted Justise of the two counts of child molesting as class A felonies and one count of child molesting as a class C felony. At the sentencing hearing, the trial court merged the two class A felony convictions for double jeopardy purposes and sentenced Justise to forty-five years for the class A felony, and six years for the class C felony, with the sentences to be served consecutively, for an aggregate term of fifty-one years.

*Justise v. State*, 968 N.E.2d 868 (Table), 2012 WL 1854786, at *1-*2 (Ind. Ct. App. 2012) (internal citations omitted).

On direct appeal, Mr. Justise raised the following claims: he was denied due process because the state suppressed exculpatory evidence, namely, phone calls between he and D.B. that were not recorded in which she allegedly recanted; the trial court erred in not allowing him to impeach D.B. regarding her sexual history; and there was insufficient evidence of his guilt because D.B. was not a credible witness.[1] *Id.* at *2-*3. The Indiana Court of Appeals rejected each of these arguments. As to the first argument, the court held that "there was no evidence for the prosecution to suppress because the phone calls about which Justise complains were simply not recorded . . . due to a system wide failure." *Id.* As to the second argument, the court concluded that evidence about D.B.'s sexual history was properly excluded under Indiana Rule of Evidence 412, which "precludes the introduction of evidence of any prior sexual conduct of an alleged victim of a sex crime . . . unless that evidence would establish

---

[1] Mr. Justise also represented himself on direct appeal. (ECF 10-2.)

evidence of prior sexual conduct with the defendant[.]" *Id.* at *3. As to the sufficiency-of-the evidence claim, the court concluded that the testimony of D.B. was sufficient to support his conviction, and that his argument was "nothing more than an invitation for us to reweigh the evidence, which we cannot do." *Id.* at *4. The court therefore affirmed his conviction in all respects. *Id.* Mr. Justise sought transfer to the Indiana Supreme Court, but his petition was denied. *Justise v. State*, 975 N.E.2d 361 (Ind. 2012).

Thereafter, Mr. Justise sought habeas relief in this District asserting the following claims: (1) his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), were violated because the state destroyed recordings of phone calls in which D.B. allegedly admitted that she was not molested; (2) the state had an obligation to "make sure that the missing phone calls were recorded"; (3) he was prevented from adequately cross-examining Ashley Jackson, D.B.'s aunt, about "what exactly was told to her" by D.B.; (4) the evidence was insufficient to support his conviction because his daughter was not a credible witness; and (5) he was precluded from presenting a complete defense because of the missing phone calls in which D.B. allegedly admitted the allegation of molestation was false. *Justise v. Superintendent*, 3:12-CV-826-RL, 2014 WL 7272761, at *1-*5 (N.D. Ind. Dec. 18, 2014).

The court denied habeas relief on the merits. *Id.* As to his claims regarding the jail phone calls, the court held that he did not establish a constitutional violation because there was no evidence that any recordings existed that were not produced, or that the prosecution had otherwise engaged in misconduct with respect to the phone calls. *Id.* at *3. Rather, the record showed that the phone calls were never recorded due

to a system-wide error. *Id.* As to his claim regarding the cross-examination of D.B.'s aunt, the court concluded that the transcript showed he was not precluded from asking her the questions he pointed to; rather, he just didn't ask them. *Id.* at *4. On the sufficiency-of-the evidence claim, the court concluded that D.B. was not unreliable as a matter of law. *Id.* Instead, the court observed that "[d]espite the fact that his 12 year old daughter had difficulty describing his penis and in recalling every detail about how he molested her, she was consistent in her assertion that he did so." *Id.* The court concluded that Mr. Justise failed to establish that the state court's resolution of his claims was contrary to or an unreasonable application of Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence presented. *Id.* Mr. Justise appealed, but the Seventh Circuit denied his request for a certificate of appealability. *Justise v. Superintendent*, 3:12-CV-826-RL, ECF 36.

In January 2016, Mr. Justise filed a pro se petition for post-conviction relief in state court. *Justise v. State*, 129 N.E.3d 839 (Table), 2019 WL 2707509, at *2 (Ind. Ct. App. 2019). He asserted a "broad array" of constitutional errors, including prosecutorial misconduct and ineffective assistance of counsel. (ECF 10-10 at 25, 29.) He also asserted that he was entitled to a new trial based on the fact that D.B. had recanted her trial testimony. (*Id.* at 25.) The trial court held an evidentiary hearing, at which D.B.—by this time an adult—testified. (ECF 10-8 at 6-15.) During the hearing, Mr. Justise asked her, "[H]ave you ever been inappropriately touched by me ever in life?" to which she replied, "No. No, sir." (*Id.* at 9.)

The trial court permitted the parties to file post-hearing briefs, and thereafter concluded that Mr. Justise had waived all of his claims other than his claim seeking a new trial based on D.B.'s recantation, due to his failure to develop them through evidence or arguments. (ECF 10-10 at 29-30.) As to the new trial claim, the court determined that as a technical matter, a recantation by D.B. was not "new" evidence, because Mr. Justise had been claiming as far back as trial that "D.B. had fabricated her story and recanted it to others." (*Id.* at 31.) Furthermore, the court concluded that even if the evidence could be considered "new," D.B.'s testimony at the evidentiary hearing lacked credibility, and Mr. Justise therefore did not satisfy the standard for obtaining a new trial. (*Id.* at 32.)

On appeal, the Indiana Court of Appeals concluded that Mr. Justise's claims of free-standing trial errors were waived or barred by res judicata. *Justise*, 2019 WL 2707509, at *2-*3. The court further concluded that Mr. Justise was not entitled to a new trial based on D.B.'s recantation in light of the trial court's finding that her testimony at the evidentiary hearing was not credible. *Id.* at *4. The court found this conclusion amply supported by the record, observing that D.B.'s prior account of sexual molestation was "too clear, precise, and forthcoming to ignore now." *Id.* The court affirmed the denial of post-conviction relief. *Id.* at *5. Mr. Justise sought transfer to the Indiana Supreme Court, but his petition was denied. *Justise v. State*, 141 N.E.3d 24 (Ind. 2020).

Mr. Justise then returned to federal court with another habeas petition challenging his conviction. *Justise v. Warden*, No. 3:21-CV-080-JD-MGG (N.D. Ind. filed

Feb. 5, 2021). The court dismissed the petition as an unauthorized successive petition. *Id.*, ECF 3. He then proceeded to the Seventh Circuit to seek permission to file a successive petition. (*See* ECF 1 at 1-2.) In considering the application, the Circuit observed that Mr. Justise was raising "new evidence of innocence—namely, a recantation by his victim, and allegations by her of prosecutorial misconduct that he did not learn of until late 2015[.]" (*Id.* at 2.) However, he had not attached any records to support his claims, and instead claimed that he was unable to do so because prison staff had destroyed his legal papers and he did not have access to the law library. (ECF 2 at 9.) The Circuit therefore ordered the respondent to submit the relevant state-court records within one week. (*Id.*) For unknown reasons, the respondent did not respond to this order. (ECF 1 at 2.)

On May 17, 2021, the Circuit issued an order concluding as follows: "Constrained as we are by the records available to us today, we find that Justise has made a 'prima facie showing,' 28 U.S.C. § 2244(b)(3)(C), of innocence under § 2244(b)(2)(B)." (ECF 1 at 2.) The Circuit therefore authorized the filing of a successive petition, but expressed "no view on the merits of Justise's proposed claims." (*Id.*) The Circuit also left open "the possibility that upon reviewing the state-court record, the district court may determine that further proceedings are unwarranted." (*Id.*) The Circuit observed that "§ 2244(b)(4) will require the district court to evaluate for itself, on a more relaxed timeline than the thirty days allows us, *see id.*, § 2244(b)(3(D), whether Justise's claims go beyond a prima facie showing and in fact meet § 2244(b)(2)'s standard for a successive collateral attack." (*Id.*)

Mr. Justise's petition was then transferred to this court. (ECF 2.) In it, he asserts eight claims, which he articulates as follows: (1) prosecutor "Michelle Wall committed prosecutorial misconduct by forcing DB to lie on the stand under oath and destroying exculpatory evidence," namely, the jail phone calls between he and D.B. in which she allegedly recanted; (2) "Michelle Wall should have been called to testify" at the post-conviction evidentiary hearing; (3) "D.B., the alleged victim has recanted her testimony of being sexually assaulted, and has stated she was forced to testify falsely"; (4) on post-conviction review, the Indiana Court of Appeals did not properly address his claim that the prosecutor forced D.B. to lie and destroyed exculpatory evidence; (5) on post-conviction review, the Indiana Court of Appeals did not properly address the evidence that D.B. was forced to lie on the stand; (6) the prosecutor's failure to inform him of her conversation with D.B. in the hallway, in which D.B. allegedly told her she made up the allegations, violated *Brady*; (7) on post-conviction review, the Indiana Court of Appeals failed to address "the denial of witnesses"; and (8) he is innocent and was convicted only because the prosecutor "told a child to get on the stand and lie." (ECF 2 at 3-6.)

The respondent argues that Mr. Justise's petition should be dismissed because his claims do not meet the standard of 28 U.S.C. § 2244(b)(2). (ECF 10.) Mr. Justise filed a traverse in support of his petition. (ECF 18.) The matter is now ripe for adjudication.

II.     ANALYSIS

Mr. Justise's petition is governed by 28 U.S.C. § 2244(b), which provides in pertinent part:

(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Even though the Circuit determined that Mr. Justise made a prima facie showing sufficient to authorize the filing of a successive petition, that is not the end of the inquiry. As the Circuit observed, the statute requires that "[a] district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section." 28 U.S.C. § 2244(b)(4). In other words, Mr. Justise must "get through two gates"—one in the Circuit and one in this court—before the merits of his claims can be considered. *Bennett v. United States*, 119 F.3d 468, 470 (7th Cir. 1997); *see also Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1358 (11th Cir. 2007) ("The statute puts on the district court the duty to make the initial decision about whether the petitioner meets the § 2244(b) requirements—not whether he has made out a prima

facie case for meeting them, but whether he actually meets them."). Thus, the court must consider each claim in turn and dismiss any that do not satisfy § 2244(b)(2).

The court begins by noting that there is a considerable amount of overlap among his eight claims. They can be effectively grouped into three categories: (1) claims alleging prosecutorial misconduct based on the prosecutor's destruction of jail phone calls and her allegedly forcing D.B. to testify falsely; (2) claims of errors in the post-conviction proceedings; and (3) claims of actual innocence.

A.      Jail Phone Call Claims

In two of his claims (one and eight), Mr. Justise alleges that the prosecutor violated his rights by destroying jail phone calls in which D.B. allegedly admitted that she was not molested. However, he already litigated this claim in his first federal habeas petition. *Justise*, 2014 WL 7272761, at *3. "A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." 28 U.S.C. § 2244(b)(1). Although Mr. Justise tries to put a new spin on this claim by stating that the prosecutor wanted to destroy the phone calls to "cover her tracks" after telling D.B. to lie on the stand, the issue of whether the prosecution destroyed this evidence was already resolved in his first federal petition. The claim was denied because the evidence developed in state court showed that there was no wrongdoing by the prosecution and that the calls were not recorded due to a system error. *Justise*, 2014 WL 7272761, at *3.

Mr. Justise has no new facts to undercut the factual basis for this conclusion. He merely surmises why the prosecutor might have wanted the calls to go missing. But it

was evident from his earlier claim that the prosecution had a potential motive to destroy evidence of phone calls in which D.B. allegedly admitted that she wasn't molested. Yet the prior proceedings showed that the calls had not been destroyed. Mr. Justise is, in effect, trying to get a second bite at litigating this same claim, which is not a proper use of 28 U.S.C. § 2244(b)(2). Therefore, any claim contained in the petition related to the unrecorded jail phone calls must be dismissed.

B.    New Claims

As to the claims that were not previously litigated in federal court, Mr. Justise does not argue (nor does the court find a basis in the record to conclude) that they rely "on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable[.]" 28 U.S.C. § 2244(b)(2)(A). Thus, the only relief available to him is under 28 U.S.C. § 2244(b)(2)(B). Under this provision, to proceed further, Mr. Justise must show: (1) that the factual predicate for his claim "could not have been discovered previously through the exercise of due diligence"; and (2) that the new evidence, "viewed in light of the evidence as a whole," would be sufficient to establish by "clear and convincing evidence that, but for constitutional error, no reasonable factfinder" would have found him guilty of child molestation. 28 U.S.C. § 2244(b)(2)(B). On the second prong, Mr. Justise must show both actual innocence and an underlying constitutional violation. As the Eleventh Circuit explained:

> Under the plain language of the statute, § 2244(b)(2)(B)(ii) requires *both*
> clear and convincing evidence of actual innocence—"clear and convincing
> evidence that . . . no reasonable factfinder would have found the applicant

guilty of the underlying offense"—as well as another constitutional violation—"but for constitutional error." It is, in effect, an "actual innocence plus" standard.

*In re Davis*, 565 F.3d 810, 823–24 (11th Cir. 2009) (emphasis in original). With these principles in mind, the court turns to his new claims.

       1.      Errors in the Post-Conviction Proceedings

Several of his new claims (two, four, five, and seven) assert errors in the post-conviction proceedings, including that he was not permitted to call the prosecutor as a witness at the post-conviction evidentiary hearing and that the appellate court did not properly evaluate his claims. (*See* ECF 2 at 3-6.) However, federal habeas lies only to correct violations of the Constitution or other federal law, and errors of state law do not suffice. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "It is well established that the Constitution does not guarantee any postconviction process, much less specific rights during a postconviction hearing." *Flores-Ramirez v. Foster*, 811 F.3d 861, 866 (7th Cir. 2016). "Unless state collateral review violates some independent constitutional right, such as the Equal Protection Clause, errors in state collateral review cannot form the basis for federal habeas corpus relief." *Id.* (citation omitted). For example, this standard is satisfied if the petitioner was denied access to post-conviction proceedings entirely on some prohibited ground, such as indigency. *Id.*

Mr. Justise does not assert that he was denied access to state post-conviction proceedings entirely, and indeed, the record reflects that he was afforded an evidentiary hearing and permitted to litigate the merits of his post-conviction petition in state court. He also has not alleged the violation of "some other, independent constitutional right in

the way the State administers its postconviction proceedings." *Id.* Instead, he merely expresses disagreement with rulings made by the state courts in his case. (ECF 2 at 3-6.) Such claims are not cognizable on federal habeas review. *See Flores-Ramirez*, 811 F.3d at 866 (petitioner's claim that he "did not receive a fair hearing on his postconviction motion" was not cognizable on federal habeas review); *Jones v. Butler*, 778 F.3d 575, 586 (7th Cir. 2015) (claim that state court improperly denied petitioner an evidentiary hearing in post-conviction proceedings, even though couched as a "due process" violation, was not cognizable on federal habeas review); *Hamlet v. Warden*, No. 120-CV-01520-JPH-DLP, 2022 WL 356162, at *3 (S.D. Ind. Feb. 7, 2022) (petitioner's claim that the state violated his rights in the post-conviction proceedings when it failed to consider certain evidence was not cognizable on federal habeas review); *Cal v. Dorethy*, 430 F. Supp. 3d 482, 490 (N.D. Ill. 2019), *aff'd sub nom. Cal v. Garnett*, 991 F.3d 843 (7th Cir. 2021) (alleged errors by the state court on post-conviction review "in evaluating Petitioner's evidence and making credibility determinations" was not a cognizable constitutional claim).

Therefore, Mr. Justise's claims of error in the state post-conviction proceedings do not satisfy 28 U.S.C. § 2244(b)(2)(B)(ii), because they do not allege a cognizable "constitutional error."

### 2. Free-Standing Actual Innocence Claims

Mr. Justise next asserts (in claims one, three, six, and eight) that he is innocent of child molestation in light of D.B.'s recantation. In effect, he argues that he is entitled to federal habeas relief because he is actually innocent. However, "the Supreme Court has

never held that actual innocence claims, standing alone—separate and apart from any constitutional error—could support habeas relief." *Cal v. Garnett*, 991 F.3d 843, 850 (7th Cir. 2021); *see also Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); *Arnold v. Dittmann*, 901 F.3d 830, 837 (7th Cir. 2018) ("To date, an assertion of actual innocence based on evidence post-dating a conviction has not been held to present a viable claim of constitutional error."). The Supreme Court has left open the possibility that claims of actual innocence may be enough to justify collateral relief in *capital* cases, *see Cal*, 991 F.3d at 850, but Mr. Justise is not a capital defendant. Thus, his free-standing actual innocence claims do not satisfy 28 U.S.C. § 2244(b)(2)(B)(ii), because they do not allege a cognizable "constitutional error." *See Davis*, 565 F.3d at 823–24.

Even if actual innocence were to be recognized as a free-standing constitutional claim entitling a petitioner to federal habeas relief—"a very difficult issue . . . that the Supreme Court will likely have to answer," *Cal*, 991 F.3d at 850—Mr. Justise must demonstrate that the facts supporting his actual innocence claim establish "by clear and convincing evidence that . . . no reasonable factfinder" would have found him guilty of

child molestation.[2] 28 U.S.C. § 2244(b)(2)(B)(ii); *see also United States v. Buenrostro*, 638 F.3d 720, 724 (9th Cir. 2011) (observing that to satisfy § 2244(b)(2)(B)(ii), new evidence must "clearly and convincingly prove the prisoner's innocence").

Mr. Justise's actual innocence claim is premised on D.B.'s testimony at the post-conviction evidentiary hearing that he never molested her. (ECF 10-18.) Proving actual innocence with this type of evidence—rather than with compelling scientific or alibi evidence, for example—is difficult, because post-trial recantations by witnesses are viewed with "great skepticism even under the best of circumstances." *U.S. ex rel. Jones v. DeRobertis*, 766 F.2d 270, 272 (7th Cir. 1985); *see also Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) (observing that "[t]o demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim"). Recantations by child-victims of sexual assault warrant special concern, particularly where the defendant is a close family member. *Arnold*, 901 F.3d at 839. As the Seventh Circuit recognized in a case involving another child-victim who recanted allegations of a parent's abuse years after the trial, "[i]t is entirely possible that [the victim's] recantation

---

[2] To prove actual innocence that would excuse a procedural default, the petitioner must show that in light of new evidence, "it is *more likely than not* that no reasonable juror would have found him guilty beyond a reasonable doubt." *Arnold v. Dittmann*, 901 F.3d 830, 837 (7th Cir. 2018) (emphasis added). To establish grounds for pursuing a successive habeas petition, the petitioner must show that new evidence establishes by *clear and convincing evidence* that no reasonable factfinder would have found him guilty of the underlying offense. 28 U.S.C. § 2244(b)(2)(B)(ii) (emphasis added). The standard is thus more demanding in the context of a successive petition.

is the product of guilt and/or pressure from family members rather than a belated confession of what is true."[3] *Id.*

Critically, the state court judge who presided over the post-conviction hearing and heard D.B.'s testimony did not find her credible. The judge, who also presided over Mr. Justise's two criminal trials, observed that D.B. had been "poised, clear, consistent and detailed" in her trial testimony, "even in the face of graphic cross-examination from the Defendant, her father." (ECF 10-10 at 33.) The judge contrasted this to her "short, perfunctory statements a decade later" at the post-conviction hearing. (*Id.*) The judge declined to "speculate as to [D.B.'s] motives" for recanting her trial testimony, but noted that she did not show "any indication of remorse, sorrow, or understanding of the importance of what she was saying" at the post-conviction hearing. (*Id.* at 27.) Based on her demeanor and the other record evidence, he did not find her recantation "worthy of credit." (*Id.* at 33.)

On habeas review, the court is bound by the state court's factual findings related to a witness's credibility unless the petitioner rebuts the presumption of correctness with clear and convincing evidence. *Kirkman v. Thompson*, 958 F.3d 663, 666 (7th Cir. 2020); *Amerson v. Farrey*, 492 F.3d 848, 852 (7th Cir. 2007). Mr. Justise does not address

---

[3]  According to an expert who testified in another case involving a recantation by a child-victim, "it is commonly accepted that recantations of sexual abuse allegations occur in twenty-five percent of cases." *Curtis v. Warden*, No. 3:20-CV-676-JD-MGG, 2022 WL 168555, at *8 (N.D. Ind. Jan. 18, 2022). In the expert's view, children are more likely to recant allegations of sexual abuse if the abuser is a family member with whom they have a close relationship. *Id.* They may feel guilty, threatened, or may be motivated to recant in order to reunite their family, and these motivations can persist into adulthood. *Id.*

the state court's adverse credibility determination or make any attempt to satisfy this standard.

This court's own review shows that the state court's adverse credibility determination is amply supported by the record. Because the post-conviction judge heard both D.B.'s trial testimony and her recantation, he was "in an unusually good position to make a determination" about her credibility. *DeRobertis*, 766 F.2d at 272. He noted specifics about her demeanor on the stand which suggested to him that she was not taking the matter seriously and was, in effect, simply saying what Mr. Justise wanted her to say. Mr. Justise has not given this court any reason to question the trial court's assessment of D.B.'s demeanor during her testimony.

Furthermore, the record reflects that during the lengthy pretrial and trial proceedings, D.B. "did not waver in her accusations."[4] *Justise*, 2019 WL 2707509, at *4. She recounted her allegations of molestation to multiple people over the course of several years, and in a recorded phone call between her and her father that she presumably thought was private, she directly confronted him about the molestation. *Justise*, 2012 WL 1854786, at *1. She told him during the phone call that she was "not lying" and "quoted his comment to her that his finger in her vagina would 'tingle a little bit.'" *Id.* at *2. During trial, despite being subject to a "graphic cross-examination"

---

[4] Mr. Justise was charged in August 2006, and there were protracted pretrial proceedings over the course of more than year. A trial was held in September 2007 but it resulted in hung jury, and a second trial was held in October 2008. (ECF 10-1; ECF 10-10 at 23, 33.)

by her own father, she rebuffed his arguments that she was not being truthful and "insist[ed] that Petitioner did touch [her] inappropriately." (ECF 10-10 at 32.)

Given the amount of time D.B. steadfastly maintained the truth of her allegations following the offense, the state court reasonably concluded that her recantation so many years after trial was not credible. In light of the state court's determination that D.B. was not credible when she testified that Mr. Justise never molested her, the court concludes that he has not satisfied the actual innocence standard. *See Cal*, 991 F.3d at 850 (concluding that petitioner did not establish actual innocence even though witness's "recantation casts some doubt on [his] guilt," where petitioner did not rebut state court's determination that witness was not credible); *Curtis v. Warden*, No. 3:20-CV-676-JD-MGG, 2022 WL 168555, at *9 (N.D. Ind. Jan. 18, 2022) (petitioner did not establish actual innocence where he failed to rebut state court's finding that recantations of child-victim witnesses were not credible).

The court considers the Circuit's opinion in *Arnold v. Dittman*, 901 F.3d 830 (7th Cir. 2018), a habeas case involving similar facts, but finds it distinguishable. There, the petitioner was convicted of sexual assault of a child based primarily on the testimony of the victim, who was his son. *Id*. at 832. Three years after the trial, the victim signed an affidavit in which he recanted his trial testimony, and the petitioner submitted the affidavit in connection with a petition for post-conviction relief. *Id*. at 834. The state courts denied the petition without a hearing after finding that the affidavit did not constitute new evidence under state law. *Id*. at 834-35. In ruling on the petitioner's federal habeas petition, the district court concluded that the petitioner did not satisfy

18

the actual innocence standard, relying on the state court's analysis that the son's recantation was not "new." *Id.* On appeal before the Seventh Circuit, the petitioner's central argument was that the veracity of the victim's recantation had not been reviewed by any court and that an evidentiary hearing would be needed to do so. *Id.* at 838. The Seventh Circuit agreed, recognizing that there were substantial reasons to question the credibility of recantations as a general matter, but concluding that the issue could not be resolved without an evidentiary hearing. *Id.* The Circuit also concluded that the district court should not have relied on the state court's characterization of the affidavit as cumulative evidence given that it was made in the context of a state law question, rather than in the context of a credibility determination. *Id.* at 840-41.

Although *Arnold* bears some similarity to this case, there are critical differences. Significantly, here, the state court afforded Mr. Justise an evidentiary hearing so that the credibility of D.B.'s recantation could be assessed. The state court weighed the credibility of her testimony rather than rejecting it for procedural reasons, and determined that it was not credible. In ruling on Mr. Justise's actual innocence claim, this court is not relying on the state courts' analysis of whether the recantation constitutes new evidence under state law, and is instead deferring to the state courts' credibility determination as required by 28 U.S.C. § 2254(e)(1).

For these reasons, the court concludes that any free-standing actual innocence claim contained in the petition does not meet the standard of 28 U.S.C. § 2244(b)(2)(B)(ii).

3.      Prosecutorial Misconduct Claims

What remains are Mr. Justise's claims (articulated in different ways within claims one, three, six, and eight) that in the hallway during trial, D.B. told the prosecutor that she had made up the allegation of molestation, but the prosecutor told her to lie on the stand and say that Mr. Justise molested her. (ECF 2 at 3.) If true, this could form the basis for a cognizable constitutional claim. *See Brady*, 373 U.S. at 87-88 (suppression by the prosecution of evidence favorable to an accused violates due process); *Napue v. Illinois*, 360 U.S. 264 (1959) (defendant's due process rights are violated when the prosecution knowingly relies on false testimony to obtain a conviction). As the respondent points out, however, Mr. Justise did not develop the factual basis for such a claim in the state proceedings. He called D.B. as a witness at the post-conviction evidentiary hearing and asked her directly whether he had ever molested her, but he never asked her anything about an alleged conversation with the prosecutor wherein she recanted her allegation of abuse and the prosecutor told her to provide false testimony. (*See* ECF 10-8 at 2-21.)

In his traverse, Mr. Justise argues that he could not have developed the basis for the claim in state court because the judge presiding over the post-conviction hearing would not let him ask any questions about the prosecutor. (ECF 18 at 2.) This court has reviewed the transcript of the post-conviction evidentiary hearing and finds his argument unpersuasive. The transcript reflects that the only mention of the prosecutor came at the beginning of the hearing, when Mr. Justise asked if he could "make an offer of proof" about "Michelle Wall's status." (ECF 10-8 at 5.) The court appeared confused

by this request and did not seem to know what he was referring to. (*Id.*) The court instructed him that the matter was set for an evidentiary hearing, and that he should proceed to call his first witness. (*Id.*) Mr. Justise proceeded to call D.B. as a witness and to ask her questions about whether he had ever molested her. (*Id.* at 6-15.) He did not ask her any questions about an alleged conversation in the hallway with the prosecutor, or any other questions related to whether the prosecutor had pressured her to testify falsely. (*See id.*) At the conclusion of D.B.'s testimony, the trial court stated: "Next witness." (*Id.* at 15.) Mr. Justise replied, "There is no more witnesses, Your Honor." (*Id.*) The court then asked Mr. Justise if he rested his case, and he said, "Yes." (*Id.*) At no point during the hearing did the court prevent Mr. Justise from asking D.B. questions about whether the prosecutor told her to lie on the stand. He simply did not ask them.

In an apparent effort to patch up this evidentiary gap, Mr. Justise attaches to his traverse what purports to be an affidavit from D.B dated November 2021. (ECF 18-1.) D.B., now 28 years old, attests as follows: "At the hearing in 2006, I asked the prosecuting lady what would happen if I made the story up. She told me to say the same story I told before. That was the story I told [that] Mr. Justise touched me. I said OK. I started to cry because I didn't want to do it." (ECF 18-1 at 2.) She claims Mr. Justise "has never done anything inappropriate to me. I mean ever in life," and that she only said Mr. Justise molested her "because the prosecutor told me to say it." (*Id.*)

It is worth noting that D.B.'s account, as outlined in the affidavit, does not match entirely with the facts alleged by Mr. Justise in his petition. D.B. attests that she had an exchange with the prosecutor "in 2006," whereas Mr. Justise claims the exchange

occurred in the hallway during trial. The record reflects that Mr. Justise's trials occurred in September 2007 and October 2008. (ECF 10-10 at 23.) Additionally, D.B.'s account of her statement and the response she attributes to the prosecutor are somewhat vague. It is not entirely clear from the affidavit that she actually recanted to the prosecutor, or that the prosecutor knew she was recanting and told her to provide false testimony, as opposed to merely reassuring a reluctant witness to testify consistently with the account she had been giving for years.

But more importantly, D.B.'s affidavit recounting this alleged exchange with the prosecutor was not part of the record before the state court. AEDPA permits a federal habeas court to expand the record in only very narrow circumstances. 28 U.S.C. § 2254(e)(2); *see also Boyko v. Parke*, 259 F.3d 781, 789-90 (7th Cir. 2001). A habeas petitioner is entitled to develop the factual basis for his claim in federal court only when "the factual predicate could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(ii). The court is precluded from expanding the record when there has been a "lack of diligence" by the petitioner in developing his claim in the state proceedings. *Williams v. Jackson*, 964 F.3d 621, 631 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1237 (2021). "Diligence requires that a prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court, even if those efforts are unsuccessful[.]" *Id.* (citation and internal quotation marks omitted).

Mr. Justise has not made the necessary showing of diligence here. Specifically, he has not shown that evidence about D.B.'s alleged exchange with the prosecutor could

not have been discovered until November 2021. Indeed, in the Seventh Circuit he acknowledged that he was aware of this information as far back as 2015. (*See* ECF 1 at 2.) In his traverse, he reiterates that "DB told several people on the streets that she was forced to testify against her will" and that this information "found its way to Justise in prison . . . in 2015." (ECF 18 at 3.) He states that he "filed his PCR immediately upon learning that DB was forced to testify." (*Id.*) It is thus evident that he was fully aware of the factual predicate for the claim at the time of the post-conviction proceedings. He was granted an evidentiary hearing in the state proceedings and was permitted to call D.B. as a witness. She appeared at the hearing, was cooperative, and answered his questions; he simply did not ask her anything about an alleged exchange with the prosecutor. (ECF 10-8.)

Mr. Justise does not make a clear argument on this point, but it appears from the post-conviction docket sheet that he did take steps to have Wall testify at the hearing. His first request appears to have been denied as untimely, and a later request was denied for reasons not disclosed in the record.[5] (ECF 10-7 at 7) (docket entries Feb. 16, 2017, and Apr. 7, 2017). He asserts in his traverse that there was a hearing in February 2017 wherein the judge denied his request to subpoena Wall, but neither he nor the respondent has provided the court with a transcript of this hearing, if one exists. Nevertheless, even if the court were to presume that Mr. Justise was prevented from

---

[5] Mr. Justise asserted in his state filings that Wall was no longer employed as a county prosecutor by the time of the evidentiary hearing, and it is unclear from the existing record where she was located. (ECF 10-10 at 10.)

calling Wall as a witness for reasons unrelated to his own lack of diligence, there is nothing in the record to reflect that he could not have developed a prosecutorial misconduct claim through testimony from D.B. His argument that the judge prevented him from asking D.B. questions about the prosecutor during the evidentiary hearing is not borne out by the transcript.

The court is cognizant that Mr. Justise proceeded without the benefit of counsel in the post-conviction proceedings, but it is worth noting that this was his choice. In the order denying post-conviction relief, the trial court noted that it had "repeatedly warned the Petitioner of the dangers of proceeding *pro se* based upon the seriousness of the charges and Petitioner's lack of legal training." (ECF 10-10 at 29.) At the post-conviction evidentiary hearing, the judge reminded Mr. Justise that he had a right to counsel under state law, but he responded, in effect, that he thought it would take too long to resolve the petition if counsel were appointed and that he preferred to proceed on his own. (ECF 10-8 at 6.)

For these reasons, the court concludes that Mr. Justise is not entitled to expand the record in connection with his prosecutorial misconduct claim to obtain consideration of D.B.'s November 2021 affidavit. The record as it was presented to the state courts is devoid of evidence of prosecutorial misconduct that would satisfy the

exacting standard of § 2244(b)(2)(B)(ii).[6] Therefore, the court concludes that none of the claims in the petition satisfy 28 U.S.C. § 2244(b)(2). Therefore, the petition must be dismissed. 28 U.S.C. §2244(b)(4).

C.     Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted).

For the reasons fully explained above, Mr. Justise's claims do not satisfy the criteria of § 2244(b)(2). The court considers that the Circuit found a basis to authorize the filing of the petition in the first place, but the Circuit only determined that Mr. Justise met the prima facie requirements for pursuing a successive petition, and its order made clear that this determination was made under a very strict time deadline,

---

[6] The court notes that the state court concluded that any claim of prosecutorial misconduct contained in Mr. Justise's post-conviction petition was waived as being inadequately developed through evidence or arguments. (ECF 10-10 at 29.) This may constitute an adequate and independent state procedural bar that would preclude review of his prosecutorial misconduct claim on the merits. *See Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010) (concluding that "when a state court refuses to reach the merits of a petitioner's federal claims because they were not raised in accord with the state's procedural rules . . . that decision rests on independent and adequate state law grounds" that precludes federal habeas review). However, at present the court is only deciding the threshold issue of whether Mr. Justise can proceed with his petition under 28 U.S.C. §  2244(b)(2)(B)(ii).

and with virtually no records. (ECF 1 at 1-2.) Considering the matter after full briefing and with the benefit of state court records, the court does not find that reasonable jurists would debate whether Mr. Justise satisfies the criteria of 28 U.S.C. § 2244(b). *See Bennett*, 119 F.3d at 469–70 (observing that Circuit's determination of a prima facie showing under 28 U.S.C. § 2244(b) means "simply a sufficient showing of possible merit to warrant a fuller exploration by the district court"). Accordingly, the court declines to issue a certificate of appealability.

III.    CONCLUSION

For the reasons set forth above, the petition (ECF 2) is DISMISSED, and the petitioner is DENIED a certificate of appealability. The clerk is DIRECTED to close this case.

SO ORDERED on March 1, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT